# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION



FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 5:05 pm, Sep 01, 2017*

MARK MAITLAND,

         Petitioner,

    v.

TRACY JOHNS,

         Respondent.

CIVIL ACTION NO.: 5:15-cv-70

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Mark Maitland ("Maitland"), who is currently housed at D. Ray James Correctional Facility ("D. Ray James") in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1.)  Respondent filed a Response.  (Doc. 13.) Maitland filed a Reply.  (Doc. 16.)  For the reasons which follow, I **RECOMMEND** that the Court **DENY** Maitland's Petition, **CLOSE** this case, and **DENY** Maitland *in forma pauperis* status on appeal.

## BACKGROUND

Maitland is currently serving a seventy-eight month aggregate sentence for conspiracy to commit mail fraud and violation of conditions of supervised release.  (Doc. 13-1, pp. 30–36.) He has a projected release date of September 4, 2017, via good conduct release.  (<u>Id.</u> at p. 3.)  He is currently incarcerated at D. Ray James.[1]

At D. Ray James on June 14, 2014, a correctional officer conducted a pat search of Maitland.  (<u>Id.</u> at pp. 41–42.)  The officer located a black Verizon touch screen phone hidden in

---

[1]  The BOP contracts with GEO Group, Inc., to house low security criminal alien inmates at D. Ray James.  (Doc. 13-1, p. 1.)

Maitland's left sock.  Id.  Maitland then reached into his groin area and pulled out a black Verizon flip phone and handed it to the Officer.  Id.  On June 14, 2014, Maitland received an Incident Report which charged him with possession of a hazardous tool (cell phone) in violation of Code 108 of the prison's disciplinary regulations.  Id.

D. Ray James personnel began an investigation into the Incident Report on June 14, 2014.  Id.  The investigator advised Maitland of his right to remain silent at all stages of the disciplinary process and that his silence may be used to draw an adverse inference against him at any stage of the disciplinary process.  Id.  The investigator also informed him that his silence alone may not be used to support a finding that he committed the violation.  Id.  Maitland acknowledged that he understood these rights and stated that the Incident Report was correct, but that the phones did not belong to him.  Id.  Maitland explained that another inmate asked him to hold the phones and that he did not know what they were because he was washing clothes and his hands were wet.  Id.  The investigator concluded that there was sufficient evidence to support the Code 108 charge against Maitland, and the Incident Report was then forwarded to the Unit Disciplinary Committee (UDC) for a hearing.  Id.

On June 18, 2014, the UDC conducted a hearing, during which Maitland appeared and provided a statement in his defense.  (Id. at pp. 44–47.)  He again stated that the phones did not belong to him and that he did not know what they were because he was washing clothing at the time.  Id.  Based on the severity of the allegation, the UDC referred the matter to a hearing before a Disciplinary Hearing Officer ("DHO").  Id.  Maitland received notification of the DHO hearing and a notice of his rights at this hearing on June 18, 2014.     (Id. at pp. 48–51.)  Maitland acknowledged his opportunity to request witnesses and the assistance of a staff representative at

the hearing, but he opted not to call any witnesses or make use of his right to staff representation at that time.  Id.

DHO Jessica Van Dame conducted Maitland's hearing on July 1, 2014.  (Id. at pp. 44–47.)  Maitland was once again advised of his due process rights and provided an opportunity to make a statement and present documents.  Id.  He reiterated his waiver of his right to a staff representative and his opportunity to call witnesses.  Id.  Maitland admitted to possessing the cell phones at the hearing but continued to maintain that he did not know what they were until he was searched by prison staff.  Id.  DHO Van Dame considered this statement as well as the incident report and investigation, as well as pictures of the two cell phones that were found on Maitland.  (Id. at p. 44–47, 53.)  DHO Van Dame found Maitland's excuse insufficient to excuse his actions and she also considered the seriousness of the act of possession a cell phone in a correctional institution, and noted Maitland's discipline history involving phone abuses.  (Id. at pp. 44–47.)

DHO Van Dame determined that Maitland committed the act as charged, and she recommended Maitland be sanctioned with, *inter alia*, disallowance of forty-one days of Good Conduct Time and forfeiture of 108 days of non-vested Good Conduct Time.  (Id. at p. 46.)  DHO Van Dame forwarded her DHO report to the DHO Oversight Specialist with the Bureau of Prisons' ("BOP") Privatization Management Branch in Washington, D.C., who certified that the recommended sanctions were appropriate and that the hearing complied with due process.  (Id. at p. 56.)  Following this certification, on July 12, 2014, DHO Van Dame personally delivered a copy of her DHO repot to Maitland.  (Id. at p. 47.)

**DISCUSSION**

In his Petition, Maitland contends that his due process rights were violated because he was not granted an opportunity to call witnesses and present documentary evidence. (Doc. 1-1, pp. 3–4.) Maitland also complains that DHO Van Dame disciplined him without being an employee of the Federal Bureau of Prisons. (Id. at p. 1.) He further contends that she violated his rights to equal protection by punishing him more severely than a fellow prisoner that had the same charges against him. (Id. at pp. 1–2.) Maitland seeks to have a new disciplinary hearing before a DHO of the Federal Bureau of Prisons. (Id. at p. 4.)

Respondent counters that Maitland received the appropriate due process protections during the disciplinary proceedings and that the sanctions against him were supported by sufficient evidence. (Doc. 13, pp. 5–8.) Further, Respondent maintains the BOP did not unlawfully delegate its authority to impose inmate discipline to staff at D. Ray James. (Id. at pp. 8–9.) Finally, Respondent contends that Maitland's allegations of equal protection are not cognizable in this Section 2241 action and are unavailing.

**I.      Whether Due Process Requirements Were Met[2]**

To determine whether Maitland's right to due process was violated, it must be determined what process was due to Maitland during the disciplinary hearing process. A prisoner has a protected liberty interest in statutory good time credits, and, therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied

---

[2]  Respondent maintains that sufficient evidence supports the sanctions against Maitland. The Court agrees as the record contains, among other things, Maitland's confession and pictures of the cell phones he possessed. However, the Court need not delve deeply into that inquiry as Maitland did not contest the sufficiency of the evidence in his Petition.

when the inmate: (1) receives advance written notice of the charges against him, (2) is given the opportunity to call witnesses and present documentary evidence, and (3) receives a written statement setting forth the disciplinary board's findings of fact.  Id. (citing Wolff, 418 U.S. at 563–67).  Additionally, the Court of Appeals for the Eleventh Circuit has determined that an inmate has the right to attend his disciplinary hearing.  Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992).  "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced."  Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).  Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011).  "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Hill, 472 U.S. at 456.  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted).  In addition, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id.

        As laid out above and in the attachments to Respondent's Response, the record clearly reflects that Maitland received the required due process protections.  The search and discovery of the cell phones occurred on June 14, 2014, and Maitland received a copy of his incident report on that same date in compliance with 28 C.F.R. § 541.5(a).  Maitland does not dispute that he

received advance written notice of the charges by virtue of receipt of the incident report on June 14, 2014.  Maitland's incident report was investigated, and he received a UDC hearing on June 18, 2014 in accordance with 28 C.F.R. § 541(c).  Maitland was offered an opportunity to present documentary evidence and testimony from witnesses at the June 18, 2014, hearing.  Due to the nature of the charges, the UDC referred the incident report to the DHO, and Maitland was provided notice of the DHO hearing and notice of his rights at the DHO hearing.  Maitland was repeatedly advised of the right to "call witnesses" and "present documentary evidence."  (Doc. 13-1, pp. 49–51.)

The hearing was held on July 1, 2014, and Maitland was afforded sufficient advance notice of the hearing, the charges, and his rights.  Maitland attended the hearing, and his due process rights were again read and reviewed with him.  (Id. at pp. 44–51.)  He repeatedly indicated that he understood his rights, and he was provided an opportunity to make a statement and present documents.  Id.  Maitland waived his right to a staff representative and he did not request to present witness or documentary evidence.  Id.

The well-documented evidence that Maitland was advised of his rights and that he had an opportunity to present witnesses and documentary evidence far outweighs his conclusory allegations to the contrary.  Maitland received all of the due process protections afforded him during the disciplinary proceedings, and any contentions to the contrary are without merit.  Thus, the Court should DENY this portion of Maitland's Petition.

## II.    Whether the BOP Improperly Delegated Disciplinary Authority

To determine whether DHO Van Dame was authorized to impose sanctions against Maitland, the Court must look to the applicable statutes and regulations.  The BOP is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of

offenses against the United States."  18 U.S.C. § 4042(a)(3).  The BOP's authority in this area may include contracting out the care of prisoners to private facilities.  18 U.S.C. § 4013(a)(3).  The relationship between the federal government and facilities which house federal inmates pursuant to contract has been described as follows:

> Even though the federal government may enter into contracts with a local agency for imprisonment of federal prisoners, 'no federal agency or officer thereof has any authority to exercise any control over the day to day management of the local institution or over the details of the custody and care of federal prisoners confined therein.'. . . . 18 U.S.C. § 4001(b)(1), [provides] that '[t]he control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws.  Therefore, when the Attorney General is not permitted to fulfill this role with respect to a penal facility, even when a contract for usage of that facility exists, the facility cannot properly be categorized as a [f]ederal prison."

United States v. Cardona, 266 F. Supp. 2d 558, 560 (W.D. Tex. 2003) (internal citations omitted).

It appears that the BOP has no direct or constructive control over managerial functions at D. Ray James, and the Court agrees that D. Ray James is not a "federal" prison.  However, it must be determined whether staff at D. Ray James, as a non-federal facility, may nevertheless impose disciplinary sanctions as delegated by the BOP.  "It is well-established that federal agencies may not delegate their statutory authorities to private parties.  However, '[t]he ultimate test of the validity of an agency's delegation of responsibility to a private party is whether the delegating agency retains final decision-making authority.'"  R. & R., Caraballo-Rodriguez v. Pugh, 3:04-cv-81 (S.D. Ga. Mar. 23, 2005) (citing Ocean Conservancy v. Evans, 260 F. Supp. 2d 1162, 1183 (M.D. Fla. 2003)), ECF No. 12.

Here, while Van Dame conducted the hearing, the BOP is charged with making a final determination as to whether disciplinary proceedings and the proposed sanctions are proper.

DHO Van Dame submitted her findings and recommended sanctions to a DHO Oversight Specialist with the BOP's Privatization Management Branch for review.  Gerald Johnson informed DHO Van Dame that the DHO report was reviewed and found to be in compliance with due process requirements and that the recommended sanctions were in accord with Program Statement 5270.09.  (Doc. 13-1, p. 56.)  Because the BOP has retained final decision-making authority in the imposition of disciplinary sanctions, it has not unlawfully delegated its authority to D. Ray James staff.  See 28 C.F.R. § 541 (federal regulations pertaining to inmate discipline); see also Program Statement 5720.09 (stating that it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with the BOP's rules in order for inmates to live in a safe and orderly environment).  Consequently, the Court should **DENY** this portion of Maitland's Petition.

**III.     Whether Maitland's Equal Protection Claims are Cognizable**

Maitland cannot bring his equal protection claim in this Section 2241 action.  His claims would ordinarily be brought pursuant to 42 U.S.C. § 1983.  The distinction between claims which may be brought under Section 1983 and those which must be brought as habeas petitions is reasonably well settled.  Claims in which prisoners challenge the circumstances of their confinement are Section 1983 actions, not habeas actions.  See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006).  Habeas actions, in contrast, explicitly or by necessary implication, challenge a prisoner's conviction or the sentence imposed on him by a court (or under the administrative system implementing the judgment).  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).  Maitland's contentions relate to the conditions of his confinement and are not cognizable pursuant to 28 U.S.C. § 2241.

Additionally, Maitland does not plausibly allege an equal protection claim.  In order to state a viable equal protection claim, a prisoner must allege: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race.  Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001).  In this case, Maitland contends that he received a more severe punishment than another inmate that committed the same offense.  However, Maitland failed to allege that he is similarly situated to that inmate, particularly given the number of inmate-specific factors that the DHO considers when fashioning a punishment, including the inmate's disciplinary history.  Moreover, he fails to allege that he was discriminated against based on a constitutionally-impermissible basis (such as race).

For all of these reasons, the Court should **DENY** this portion of Maitland's Petition.

## IV.    Leave to Appeal *In Forma Pauperis*

The Court should also deny Maitland leave to appeal *in forma pauperis*.  Though Maitland has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327

(1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Maitland's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** *in forma pauperis* status on appeal.

CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DENY** Maitland's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **CLOSE** this case.  I further **RECOMMEND** that the Court **DENY** Maitland leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Maitland and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of September, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA